# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| **VENARD ASONGAYI** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | |
| **HUNTER WARFIELD, INC.,** | ) | <u>Jury Trial Demanded</u> |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## INTRODUCTION

1. This action arises out of Defendant Hunter Warfield, Inc.'s (hereinafter "Hunter") violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") in its illegal efforts to collect a consumer debt from Plaintiff Venard Asongayi (hereinafter "Plaintiff").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Venue is proper in this District because a substantial part of acts or omissions giving rise to Plaintiff's claims occurred here, Plaintiff resides here, and Hunter transacts business here.

## PARTIES

4. Plaintiff is a natural person who resides in Washington County, Tennessee.

5. Hunter is a for-profit foreign corporation ( Maryland) registered to do business in Tennessee with a principal office located at 4620 Woodland Corporate Blvd, Tampa, FL 33614-2415 that maintains Corporation Service Company, 2908 Poston Ave, Nashville, TN 37203-1312 as its registered agent.

## FACTUAL ALLEGATIONS

6.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7.      Hunter regularly engages in the business of using the mails and telephone system, sending collection letters, reporting to credit reporting agencies, including Experian, all in an effort to collect consumer debt owed or due or asserted to be owed or due another, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8.      Hunter has alleged that Plaintiff incurred an obligation to pay money arising out of transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and the obligation is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely a debt alleged to be owed for a lease agreement Plaintiff signed with B.I.C. Enterprises, L.L.C (hereinafter "BIC") on February 11, 2015 for an apartment rental (hereinafter "debt").

9.      Pursuant to the online records with the Tennessee Secretary of State, the entity B.I.C. Enterprises, L.L.C. was actually dissolved on April 18, 2007.

10.     Also, pursuant to the real estate records of Washington County, Tennessee the property where the apartment in which the Plaintiff lived for almost 5 years was transferred:

     (a)    From Peachtree Investments, Inc. to an entity named BIC Partnership (not BIC) in January 2010;

     (b)    From BIC Partnership, Party of the First Part, to PAUL A. KENWORTHY and/or KIMBERLY A. KENWORTHY, TRUSTEES OF THE PAUL A. KENWORTHY AND KIMBERLY A. KENWORTHY FAMILY TRUST u/t/d July 17, 2014; SCOTT O'MALLEY and DAWN O'MALLEY, TRUSTEES OF THE O'MALLEY FAMILY TRUST dated February 24, 2009; and DEAN J. O'MALLEY, TRUSTEE

OF THE DEAN J. O'MALLEY LIVING TRUST dated January 26, 2009, Parties of the Second Part (hereinafter "Kenworthy & O'Malley Trusts") in September 2016; and

(c)     From the Kenworthy & O'Malley Trusts to an entity named Antioch Landing Apartments, LLC (hereinafter "Antioch Landing") on March 19, 2020.

11.     On January 3, 2020, the Plaintiff provided a "Notice to Vacate" the apartment to D & K Management, Inc. (hereinafter "D & K"), which was signed by the Plaintiff and the property manager, Courtney Skeen, whom, on information and belief, is an employee of D & K, on the same date. **Redacted copy filed as exhibit 1 to this Complaint (hereinafter referred to as "Doc. 1-1").**

12.     After alleged default, the debt was assigned to Hunter by D & K or Antioch Landing, or was otherwise acquired by Hunter for purposes of collection from the Plaintiff.

### Collection Communications

13.     A "communication" under the FDCPA means conveying the information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. § 1692a(2).

### June and July 2020 Experian Credit Reporting by Hunter

14.     Experian is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) that regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to consumers and third parties.

15.     On June 13, 2020, the Plaintiff was notified by Experian that Hunter had flagged an account as "collections" and the balance owed being reported by Hunter was $1,476.00.

16.     On June 26, 2020, the Plaintiff obtained information from Experian showing that Hunter was reporting the balance owed on the account was $1,493.00 and the name of the original

creditor was "JCity – Antioch".

17.    On June 27, 2020, the Plaintiff obtained information from Experian showing that Hunter had flagged his account as "collections" and his FICO score had decreased by 26 points because of the reporting of the debt by Hunter.

18.    On July 3, 2020, the Plaintiff obtained information from Experian showing that his FICO score had decreased another 23 points because of the reporting of the debt by Hunter.

19.    The Plaintiff had never heard of an entity named "JCity – Antioch" that Hunter was reporting to Experian as the name of the creditor he allegedly owes the debt to as he had signed the lease agreement with BIC on February 11, 2015, and BIC, allegedly, was the original creditor, and, as stated above, the ownership of the apartment complex where the Plaintiff lived was transferred from BIC Partnership to the Kenworthy and O'Malley Trusts, and then to Antioch Landing.

20.    The Plaintiff does not believe that D & K was the property management company for his apartment complex when he moved in, and does not remember when D & K started managing the apartment complex,

21.    Also, the Plaintiff does not remember that D & K ever notifying him that ownership of the property had changed when he lived there and after he moved out, and that who was the owner of the alleged debt that Hunter was attempting to collect from him.

### *Plaintiff's July 16, 2020 Telephone Call to Hunter*

22.    After becoming aware that Hunter was reporting information to Experian regarding a debt he allegedly owed to "JCity – Antioch", the Plaintiff first contacted the Hunter office on July 16, 2020 by telephone in the morning, and left a voice message telling Hunter that the

4

Plaintiff saw an account on his Experian credit report associated with Hunter and he wondered what it was all about.

***Plaintiff's July 16, 2020 Telephone Conversation with Hunter***

23.     After not receiving a response to his call from the Hunter office, on the same day, in the afternoon, the Plaintiff contacted Hunter again and this time spoke with a female debt collector.

24.     The Plaintiff does not remember name of the female debt collector he spoke to at Hunter on July 16, 2020, or if she ever provided her name, so she will be referred to hereinafter as Jane Doe.

25.     During the Plaintiff's conversation with Jane Doe, the Plaintiff asked her who the creditor was that Hunter was attempting to collect the debt for and Jane Doe responded that she could not give the Plaintiff the identity of the creditor.

26.     After Jane Doe stated she could not provide the name of the creditor, the Plaintiff disputed the charge with Jane Doe, and asked her why Hunter was reporting the debt Hunter, which brought his credit score down 49 points without ever sending a single written statement to him about the debt.

27.     Jane Doe responded to the Plaintiff's question by telling him, "You should pay the debt", and the conversation ended.

28.     Although the Plaintiff called Hunter on July 16, 2020 and spoke with Jane Doe about the debt Hunter was reporting that he owed to Experian, when Jane Doe refused to provide the Plaintiff the name of the creditor that Hunter was attempting to collect the debt for and responded to the Plaintiff's question about why Hunter was reporting the debt without sending him a written statement about the debt, the call turned into a collection call and

was a "communication" as defined as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt.

29.    The communication by Jane Doe with the Plaintiff on July 16, 2020 sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance the Plaintiff allegedly owes for a lease agreement Plaintiff signed with BIC for an apartment rental.

### *Plaintiff's July 20, 2020 Telephone Conversation with Hunter*

30.    The Plaintiff received no follow-up information about the debt from Hunter after the July 16, 2020 telephone call with Jane Doe, so on July 20, 2020, the Plaintiff called Hunter again and this time spoke with a different female debt collector.

31.    The Plaintiff does not remember the name of the female debt collector he spoke to at Hunter on July 20, 2020, or if she ever provided a name, so she will be referred to hereinafter as Jill Doe.

32.    During the Plaintiff's conversation with Jill Doe, he asked her for a breakdown of the amount Hunter was reporting to Experian that was owed on the debt, which kept increasing, and Jill Doe provided him a breakdown, and stated that the amount was increasing due to interest accruing on the debt.

33.    During the Plaintiff's conversation with Jill Doe, she also told him that the creditor they were attempting to collect the debt for was actually D & K, to which the Plaintiff responded that he did not owe D & K any money, and disputed the entire amount Hunter was attempting to collect, and the conversation ended.

34.    Although the Plaintiff called Hunter on July 20, 2020 and spoke with Jill Doe about the debt Hunter was reporting that he owed to Experian, when Jane Doe provided the

breakdown for the debt allegedly owed, told the Plaintiff that D & K was the creditor that Hunter was attempting to collect the debt for, and that the amount owed was increasing due to interest accruing on the debt, the call turned into a collection call and was a "communication" as defined as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt.

35.     The communication by Jill Doe with the Plaintiff on July 20, 2020 sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance the Plaintiff allegedly owes for a lease agreement Plaintiff signed with BIC for an apartment rental.

### Plaintiff's July 24, 2020 Telephone Conversation with D & K

36.     After still not receiving anything in writing from Hunter that would provide him more information about the debt, the Plaintiff called D & K's office in Johnson City and spoke with an individual named Kristin Peterson (hereinafter "Ms. Peterson") and told her he disputed the amount Hunter was attempting to collect from him.

37.     During this telephone conversation, Ms. Peterson and the Plaintiff discussed some of the amounts shown as owed by the Plaintiff on D & K's system, which the Plaintiff disagreed with, including the amount of rent owed, and Ms. Peterson promised to send him the billing list for the debt that day, but he did not receive it.

### Plaintiff's July 27, 2020 Telephone Conversation and Emails with D & K

38.     On July 27, 2020, the Plaintiff again called D & K and got Ms. Peterson to email him a copy of a document titled "Final account statement – Revised" and was dated July 28, 2020 (hereinafter "July 28, 2020 statement").  **Copy filed as exhibit 2 to this Complaint (hereinafter referred to as "Doc. 1-2").**

39. The July 28, 2020 statement from Ms. Peterson via email showed a balance owed of $1,450.90 and listed no amount on the statement showing that interest was accruing on the debt. **See Doc. 1-2.**

40. The Plaintiff responded to Ms. Peterson by email on the same day to confirm that he had disagreed and disputed with her on the telephone on July 24, 2020 several of the items listed on the July 28, 2020 statement.

### *Plaintiff's July 28, 2020 Emails with D & K*

41. Ms. Peterson responded by email on July 28, 2020, and provided more information about the additional charges added to which the Plaintiff responded via email on the same day and requested a copy of the original invoice on the account.

42. In response to this request from the Plaintiff, on the same day Ms. Peterson sent the Plaintiff via email a copy of a document titled "Final account statement – Revised" and was dated March 3, 2020 (hereinafter "March 3, 2020 statement"). **Copy filed as exhibit 3 to this Complaint (hereinafter referred to as "Doc. 1-3").**

43. The March 3, 2020 statement showed that the amount owed was $1,448.90 and listed no amount on the statement showing that interest was accruing on the debt.

### *Plaintiff's First Telephone Conversation with Hunter on July 29, 2020*

44. On July 29, 2020, the Plaintiff saw on his phone that he had received a call from Hunter and the Plaintiff returned the call to Hunter on the same day, first speaking with a male debt collector who identified himself as James, and hereinafter will be referred to as James Doe.

45. After finding the account on Hunter's computer system, James Doe told the Plaintiff the collection was for a debt owed for rental property at Antioch and the balance owed on the account was $1,494.95 and that additional interest had accrued on the debt.

46. Although the Plaintiff called Hunter on July 29, 2020 and spoke with James Doe about the debt Hunter was reporting that he owed to Experian, when James Doe told the Plaintiff the collection was for a debt owed for rental property at Antioch and the balance owed on the account was $1,494.95 and that additional interest had accrued on the debt, the call turned into a collection call and was a "communication" as defined as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt.

47. The communication by James Doe with the Plaintiff on July 29, 2020 sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance the Plaintiff allegedly owes for a lease agreement Plaintiff signed with BIC for an apartment rental.

48. In response to the information about the debt provided by James Doe, the Plaintiff asked James Doe what items were listed as owed for the debt, and James Doe responded he would have to transfer the Plaintiff to another department, and placed him on hold.

49. In a few minutes, a female debt collector, who only provided her first name, Liz, and will be referred hereinafter as Liz Doe, came on the line and after pulling up the Plaintiff's account asked him how she could help him, to which the Plaintiff responded that he was transferred to her and he wanted to know what the money Hunter said he owed was about.

50. To this request, Liz Doe replied that the collection was for D & K Management, Inc., but we are no longer reporting the account and are stopping collections on the account because we need to verify the information with our client, and we are waiting for the response back

from our client, and once Hunter has all the information from our client regarding the debt she would contact the Plaintiff again.

51. In response to the information provided by Liz Doe, the Plaintiff replied that the information being reported by Hunter was already on his credit record and having a negative impact on his credit, to which Liz Doe responded that Hunter has had the account since March 2020 and started reporting it to credit reporting agencies in June 2020.

52. Liz Doe further told the Plaintiff that Hunter cannot remove the debt from credit reporting because we need to verify the information and once Hunter has all the information from the creditor, Hunter will contact you in regard to the debt.

53. In response to this, the Plaintiff asked Liz Doe if she meant that Hunter was not going to remove the debt from his record now, and Liz Doe replied that Hunter was not going to remove it now, that Hunter has stopped reporting it, but Hunter needs to verify the information first to determine what actions Hunter needs to take in regard to the debt.

54. The Plaintiff did not understand Liz Doe's explanation of the status of the debt and asked her what she meant when said Hunter had stopped reporting the debt, but it is still showing up on his credit record.

55. Liz Doe replied that Hunter reports the account every two weeks and when that time comes up and Hunter has not verified the information, Hunter will remove the pending balance the next time Hunter is scheduled to report the debt.

56. The Plaintiff and Liz Doe discussed the details of the amount the Plaintiff allegedly owes to confirm the information he had been provided by D & K was the same, and the conversation ended.

57. Although the Plaintiff called Hunter on July 29, 2020 and spoke with Liz Doe about the debt Hunter was reporting to Experian, Liz Doe told the Plaintiff that the debt was being collected for D & K, provided him a breakdown on the amount Plaintiff allegedly owes, and told him that Hunter was no longer reporting the account, which it still was, and that it could not be removed from the Plaintiff's credit record, the call turned into a collection call and was a "communication" as defined as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt.

58. The communication by Liz Doe with the Plaintiff on July 29, 2020 sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance the Plaintiff allegedly owes for a lease agreement Plaintiff signed with BIC for an apartment rental.

### *Plaintiff's Second Telephone Conversation with Hunter on July 29, 2020*

59. After comparing the information provided in writing by D & K and on the telephone by Liz Doe, a few minutes later, the Plaintiff called Hunter back, first speaking with a male debt collector who identified himself as Sunny, and will be referred hereinafter as Sunny Doe.

60. The Plaintiff told Sunny Doe that he had called Hunter a few minutes earlier and had a few more questions about the information he was provided.

61. After determining what account the Plaintiff was calling about, Sunny Doe placed the Plaintiff on hold, and then came back on the telephone and told the Plaintiff he was going to transfer him to another person.

62.    The person the Plaintiff was transferred to was Liz Doe, and the Plaintiff requested if she could send him the information they had discussed earlier via email or regular mail, and Liz Doe replied she would not be able to do that until Hunter verified the information.

63.    Liz Doe agreed to discuss with Plaintiff the breakdown of the debt information again over the telephone and the information she provided was the same as on the March 3, 2020 statement the Plaintiff had received from D & K for a total of $1,448.90, which had since been revised by D & K, and the conversation ended.

### Plaintiff's July 30, 2020 In-person Conversation with D & K

64.    After receiving both the March 3, 2020 statement and July 28, 2020 statement from D & K, and the information on the telephone from Liz Doe, on July 30, 2020, the Plaintiff went to D & K's office in Johnson City and spoke with Ms. Peterson again, which conversation made it clear to the Plaintiff that D & K was formulating random cost items, changing them at will, and creating multiple and inconsistent bills.

65.    While at the D & K office on July 30, 2020, the Plaintiff requested a copy of the inspection sheet from Ms. Peterson, but was told D & K did not have a copy of an inspection sheet, and the Plaintiff also requested a copy of any pictures taken of the apartment during the inspection, and was told that D & K had no pictures that were taken during the inspection.

66.    After this conversation with Ms. Peterson, the Plaintiff requested a copy of the inspection sheet from D & K by certified mail, but, as of today, he still has not received a response.

### Plaintiff's August 6, 2020 Telephone Conversation with Hunter

67.    After not receiving any additional information from D & K or Hunter, on the afternoon of August 6, 2020 the Plaintiff again called Hunter and spoke with a different female debt collector, who said her name was Evelyn, and will be referred to hereinafter as Evelyn Doe.

68. After hearing Evelyn Doe state that the telephone call would be recorded, the Plaintiff asked her if he could also record the telephone conversation, and after placing the plaintiff on hold for a few minutes, Evelyn Doe came back online and, after a short discussion about recording, finally agreed to allow the Plaintiff to record the conversation

69. Evelyn Doe then requested the Plaintiff's number, which he provided, and then she pulled up the account which showed that the Plaintiff had had earlier calls with persons at Hunter, and there was a note that the Plaintiff had an attorney, but Plaintiff confirmed that he had not hired an attorney.

70. Evelyn Doe replied okay and said let me transfer you to your representative and she placed the Plaintiff on hold.

71. In a few minutes, a male debt collector, who identified himself as Walter from Hunter and will be referred to as Walter Doe, came on the line and stated he was with Hunter and the debt he was attempting to collect was for Antioch Apartments and the amount owed was $1,504.50.

72. Walter Doe also asked the Plaintiff to confirm that he had not hired an attorney, which the Plaintiff replied that he had not hired an attorney, and wanted to know if the debt was going to be taken off his credit report and the collection stopped or not.

73. Walter Doe replied to the Plaintiff that since he had not paid the debt, Hunter had to continue the collection effort which means the debt is still on the Plaintiff's credit record, and the conversation ended.

74. Although the Plaintiff called Hunter on August 6, 2020, it was in response to a telephone call made by Hunter to his telephone, and he spoke with Walter Doe about the debt Hunter was reporting that he owed to Experian, when Walter Doe told the Plaintiff that the debt

he was attempting to collect was for was being collected for D & K, and provided him a breakdown on the amount Plaintiff allegedly owed, and told him that Hunter was no longer reporting the account, which it still was, and that it could not be removed from the Plaintiff's credit record, the call turned into a collection call and was a "communication" as defined as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt.

75.     The communication by Walter Doe with the Plaintiff on August 6, 2020 sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance the Plaintiff allegedly owes for a lease agreement Plaintiff signed with BIC for an apartment rental.

*Plaintiff's August 11, 2020 Experian Credit Report*

76.     Plaintiff obtained a copy of his Experian credit report dated August 11, 2020, which shows that Hunter is communicating information about the debt to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information.

77.     Each reporting of the debt to Experian is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). *See Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); *See also Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); *accord Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting

debt is "in connection with" debt collection); *Sullivan v. Experian*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at \*15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

78.  Hunter has been communicating to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information that the Plaintiff owes a debt to an entity by the name of "JCity – Antioch" in the original amount of $1,448.00 (partial account # 8012055) which has increased in the last year from the original amount to balances in excess of the amount the Plaintiff legally owes, as follows:

| **MONTH** | **BALANCE** | **ADDED ILLEGAL INTEREST** |
|---|---|---|
| June 2020 | $1,482.00 | $34.00 |
| July 2020 | $1,487.00 | $39.00 |
| August 2020 | $1,500.00 | $52.00 |

79.  Each reporting of a debt that the Plaintiff allegedly owes to an entity named "JCity – Antioch" by Hunter to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information, is a communication by Hunter in connection with collection of a debt that conveys information regarding the debt, including the name of the creditor the Plaintiff allegedly owes and the amount the Plaintiff allegedly owes, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

80.  Each reporting of a debt by Hunter to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information, with the original creditor listed

as "JCity – Antioch", sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance the Plaintiff allegedly owes for a lease agreement Plaintiff signed with BIC for an apartment rental, plus illegal interest.

## FAIR DEBT COLLECTION PRACTICES ACT

81.    The FDCPA is a federal statute which regulates debt collectors in the collection of consumer debt.  **See 15 U.S.C. §§ 1692 *et seq.***

82.    Congress passed the FDCPA because:

**(a)    Abusive Practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b)    Inadequacy of Laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c)    Available Non-Abusive Collection Methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debt.

83.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  **See 15 U.S.C. § 1692 (e).**

84. The Sixth Circuit reaffirmed in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d. 443, 448-449 (6th Cir. 2014) that: "'The Fair Debt Collection Practices Act is an extraordinarily broad statute' and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)"; *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

85. "'Courts must view any alleged [FDCPA] violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases.' *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007). (internal quotation marks and citations omitted); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)". *Stratton, supra*, at 450.

86. "Debt collection is performed through 'communication,' . . . 'conduct,' . . . or 'means'. These broad words suggest a broad view of what the Act considers collection . . . [I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013).

## FDCPA CLAIMS

87. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

88. The lease agreement the Plaintiff signed with BIC for an apartment rental mentions nothing about interest accruing on the debt and, actually, does not even include the word interest. **Copy of lease agreement filed as exhibit 4 to this Complaint (hereinafter "Doc. 1-4").** *See Massey v. Casals*, 2012 Tenn. App. LEXIS 901, *11-12, 2012 WL 6697594 (Tenn. Ct. App. 2012); *Discover Bank v. Henson*, 2008 Tenn. App, LEXIS 737, 2008 WL 5272530 at *3, (Tenn. Ct. App. 2008) (*perm. app. den*. Sup. Ct., June 15, 2009) ("[W]ithout a written

contract signed by Defendant, Discover Bank may not recover attorney's fees or a contract rate of interest.")

89.     The Plaintiff is also not aware of any lawsuit that has been filed against him on behalf of BIC that demands damages in the form of prejudgment interest, and even if a lawsuit has been filed against him in an attempt to collect a debt, the Plaintiff is not aware of any court that has awarded BIC prejudgment interest.

90.     Tenn. Code Ann. § 47-14-103(3) "provides the maximum effective rates of interest for certain transactions and states that for 'all other transactions,' the maximum effective rate of interest is ten percent (10%) per annum. . . . This statute does not authorize the assessment of interest on a debt; it provides the maximum interest rate if interest is to be assessed.[] Tennessee law does not provide a blanket 10% interest for all debt." *See Tiernan v. Capital Accounts, LLC*, 2017 U.S. Dist. LEXIS 101152 at *3 (M.D. Tenn., June 29, 2017).

91.     Tenn. Code Ann. § 47-14-109 " provides guidance as to the date from which any interest assessed on certain debt shall accrue and then states that 'in all other cases,' the time from which interest is to be computed shall be the day when the debt is payable. . . . Again, the statute does not authorize assessment of interest on a debt; it provides the dates from which any such interest shall accrue. *See Tiernan, supra*, at *3-4.

92.     In Tennessee, "[p]rejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." **See Tenn. Code Ann. § 47-14-123.**

93. An award of prejudgment interest as damages in a civil action is within the discretion of the trial court. *See Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97, 1984 Tenn. App. LEXIS 2605 (Tenn. Ct. App. 1984); *Teague Bros., Inc. v. Martin & Bayley, Inc.*, 750 S.W.2d 152, 1987 Tenn. App. LEXIS 3040 (Tenn. Ct. App. 1987); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 1992 Tenn. LEXIS 722 (Tenn. 1992), rehearing denied, -- S.W.2d --, 1993 Tenn. LEXIS 142 (Tenn. Mar. 29, 1993); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 1992 Tenn. LEXIS 722 (Tenn. 1992), rehearing denied, -- S.W.2d --, 1993 Tenn. LEXIS 142 (Tenn. Mar. 29, 1993); *Hartman v. State* -- S.W.3d --, 2003 Tenn. App. LEXIS 285 (Tenn. Ct. App. Apr. 14, 2003); *Harrison v. Laursen*, 128 S.W.3d 204, 2003 Tenn. App. LEXIS 545 (Tenn. Ct. App. 2003), appeal denied, -- S.W.3d --, 2004 Tenn. LEXIS 112 (Tenn. Feb. 2, 2004).

94. Tenn. Code Ann. § 47-14-123 "provides no help for Defendant either. That law provides that a court or jury may award prejudgment interest as an element of damages if permitted by the statutory or common laws of the state. . . . That statute clearly applies only if litigation is filed and the court enters judgment." *See Tiernan, supra*, at * 4.

95. The debt Hunter is attempting to collect from the Plaintiff did not involve a contract signed by the Plaintiff which allows the addition of interest to any amount he may have owed under the terms of the contract, and based on the information provided by D & K to the Plaintiff **[See Docs. 1-2 and 1-3]** the debt never had interest added to it by BIC, D & K, or any other entity before the debt was assigned to Hunter for collection from the Plaintiff.

### *Hunter's FDCPA Violations*

96. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

97. By adding illegal interest on a debt when there is no contract signed by the Plaintiff that allows the addition of interest to the principal amount, and by attempting to collect the illegal interest or prejudgment interest from the Plaintiff when no judgment has been entered against the Plaintiff and no court has awarded prejudgment interest as damages, Hunter falsely represented the amount of debt the Plaintiff allegedly owes on the dates Hunter reported the debt to Experian and on the dates Hunter demanded amounts from the Plaintiff that included the illegally added interest.

98. By communicating to the Plaintiff during the telephone communications with the Plaintiff, and in the credit reporting to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information, that the Plaintiff owes a greater amount than what he could legally owe on the debt by attempting to collect interest on a debt when there is no contract signed by the Plaintiff with any entity that allows the addition of interest to the principal amount and/or attempting to collect prejudgment interest from the Plaintiff that may not legally accrue on the debt until entry of a court judgment that awards prejudgment interest, Hunter is:

    (a) caused actual damages to the Plaintiff by reporting to Experian credit information that the Plaintiff owes more than he legally owes, which lowered his credit score;

    (b) falsely representing the character, amount, and legal status of the debt the Plaintiff allegedly owes and any compensation which may be lawfully received by Hunter for collection of the debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10);

    (c) threatening to take and actually taking actions that Hunter could not legally take, in violation of 15 U.S.C. § 1692e(5);

(d)      communicating credit information to the Plaintiff, Experian, and any other party allowed to access Plaintiff's Experian credit report information, which is known, or which should be known to be false, in violation of 15 U.S.C. § 1692e(8); and

(e)      using unfair and unconscionable means to collect or attempt to collect any debt by collecting or attempting to collect any amount unless such amount is authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

99.      The FDCPA, 15 U.S.C. §1692g(a)(1), requires that:

(a)      Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing

\-\-

(1)      the amount of the debt;

(2)      the name of the creditor to whom the debt is owed;

(3)      a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)      a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)      a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

100.    The communication by Jane Doe with Plaintiff on July 16, 2020 in which she refused to
        provide the name of the creditor that Hunter was attempting to collect the debt for and in
        which she responded to the Plaintiff's dispute that he owed the debt by telling him "You
        should pay the debt" **[See ¶¶ 23-27 above]**, is the initial communication by Hunter with
        the Plaintiff in connection with collection of the debt.

101.    Within five days after the initial communication in the form of the conversation by Jane
        Doe with the Plaintiff, the Plaintiff had not paid the debt, and Hunter had failed to send the
        Plaintiff a written notice containing the required disclosures in 15 U.S.C. §§ 1692g(a)(3) –
        (5).

102.    By failing to send the Plaintiff a written notice containing the required disclosures within
        five days after the initial communication when the debt had not been paid or the
        information was not contained in the initial communication, Hunter violated 15 U.S.C. §
        1692g(a)(1) – (5).

103.    "[T]he 'more than one reasonable interpretation' standard is applicable to the entirety of §
        1692e as a useful tool in analyzing the 'least-sophisticated-consumer' test. *See Clomon*,
        988 F.2d at 1319 (discussing the 'more than one reasonable interpretation' test as one of
        the 'variety of ways' in which courts attempt to protect consumers under the least-
        sophisticated-consumer standard)." *See Kistner v. Law Offices of Michael P. Margelefsky,
        LLC*, 518 F.3d 433, 441 (6th Cir. 2008).

104.    Based on Hunter's reporting the name "JCity – Antioch" to Experian as the name of the
        original creditor that the Plaintiff allegedly owes **[See ¶¶ 16 and 78 above]** and telling the
        Plaintiff during Hunter's collection communications' that D & K was the creditor who was
        owed the debt **[See ¶¶ 33-34 and 50 above]** it would not be clear to the least sophisticated

consumer who is the creditor to whom the debt is owed, and failure to identify the creditor in violation of 15 U.S.C. § 1692g(a)(2) is also a false, deceptive and misrepresentation for purposes of 15 U.S.C. § 1692e as the name of the creditor is open to more than one reasonable interpretation as to what entity is the owner of the debt.

105. Hunter's failure to identify the creditor in credit reporting and collection communications' would mislead the least sophisticated consumer as to the character or legal status of the underlying debt, in violation of 15 U.S.C. § 1692e(2)(A), and impede the least sophisticated consumer's ability to respond or to dispute collection of the debt, in violation of 15 U.S.C. § 1692g, which are material misrepresentations that violate the FDCPA.

106. Communicating to Plaintiff in the credit reporting to Experian that the name of the creditor who allegedly owns the debt is "JCity – Antioch" and the collection communications that the name of the creditor is D & K is credit information Hunter knew or should have known is false, in violation of 15 U.S.C. § 1692e(8), and the use of false representations or deceptive means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692e(10).

107. The Plaintiff disputed and disagreed that he owed the debt Hunter is attempting to collect many times during his telephone calls with Hunter, including his conversations with Jane Doe on July 16, 2020 **[See ¶¶ 23-29 above]**, Jill Doe on July 20, 2020 **[See ¶¶ 30-35 above]**, James Doe and Liz Doe on July 29, 2020 **[See ¶¶ 44-63 above]**, all which happened before Plaintiff obtained his credit report on August 11, 2020 that showed that Hunter was still communicating credit information to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information that the

amount of the debt had increased to $1,500.00, and that Hunter had not communicated that the debt was disputed by the Plaintiff.

108.    By failing to communicate to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information that Hunter knew or should have known was false, including the failure to communicate that the debt was disputed, in violation of 15 U.S.C. § 1692e(8), which is the use of false, deceptive, and misleading representations or means in connection with collection of any debt, and the use of false representations and deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair means to collect or attempt to collect any debt and the collection of any amount not permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

### *Summary*

109.    The above-detailed conduct by Hunter in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of multiple provisions of the FDCPA including, but not limited to the above-cited provisions.

## **TRIAL BY JURY**

110.    Plaintiff is entitled to and hereby respectfully demands a trial by jury. **U.S. Const. amend. 7; Fed.R.Civ.P. 38.**

## **CAUSES OF ACTION**

### **COUNT I-XIII**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1) – (5)**

111.    Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

112. Hunter's foregoing acts and omissions constitute numerous and multiple FDCPA violations including, but not limited to each and every one of the above-cited FDCPA provisions, with respect to Plaintiff.

113. As a result of Hunter's FDCPA violations, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Hunter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Hunter:

### COUNT I-XIII

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

**15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1) – (5)**

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Hunter and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against Hunter and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Hunter and for Plaintiff; and

- for such other and further relief, as may be just and proper.

11/03/20                          Respectfully submitted,

                                  **VENARD ASONGAYI**


                                  s/_____Alan C. Lee_____
                                  Alan C. Lee, BPR # 012700
                                  P. O. Box 1357
                                  Talbott, TN 37877-1357
                                  (423) 581-0924
                                  aleeattorney@gmail.com

                                  Attorney for Plaintiff